(No. 54144.—

INTERLAKE, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Michael J. Cassidy, Appellee).

*Opinion filed September 30, 1981.*

Julie O'Connor and Robert E. Maciorowski, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Goodman, Kipnis & Krasner, and Kenneth S. Rosenblum (James A. Smith, of counsel), of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

In this worker's compensation case, the arbitrator found that plaintiff, Michael Cassidy, sustained accidental injuries that arose out of and in the course of his employment on April 29, 1977, and that the injuries caused plaintiff's complete disability rendering him "wholly and permanently incapable of work." He awarded plaintiff $231.42 per week for life and $6,973.38 for necessary medical and hospital expenses. The Industrial Commission affirmed and adopted the arbitrator's decision. The circuit court of Cook County confirmed the Commission's decision in all respects except for a minor reduction of the medical expense award.

Defendant, Interlake, Inc., contends that plaintiff failed to establish (1) that the injuries arose out of and in the course of his employment, and (2) that he is wholly and permanently incapable of work, thereby rendering the Commission's findings contrary to the manifest weight of

the evidence.

Plaintiff, 62 years old, was a supervisor for defendant, Interlake, Inc. Plaintiff's employment entailed supervising carpenters, millwrights, ironworkers and engineers in the installation of storage racks. On April 29, 1977, plaintiff was assigned to a job in Brea, California, to erect pallet racks. He was advised by an ironworker's foreman that they were having difficulty separating frames which weighed between 200 and 250 pounds each. Plaintiff inserted a wood "two-by-four" between the frames and pushed down on it "with all his strength and weight." The "two-by-four" broke and struck him on the right side of his chest.

Plaintiff testified that he immediately felt a pain across his chest, under his right arm and into the palm of his hand. He also testified that his knees hit the floor, that he became nauseous, felt a pain in the sternal area of his chest and that he began to perspire very heavily. He then sat down for a period of 15 minutes. Plaintiff then handed out checks to his workers, during which time, he testified, he "felt very bad" but didn't complain to the crew. At 3 p.m., he reported the incident to his supervisor.

Plaintiff testified that while he drove from the jobsite to his motel he felt nauseous and was perspiring very heavily. When he reached his room, he experienced pain across his chest going from the left side to under his right armpit. During the remainder of that day and the next two days, Saturday and Sunday, plaintiff experienced nausea and chest pain. He took several showers, which seemed to temporarily ease the pain. He engaged in very little physical activity. On Sunday, May 1, at about 11 p.m. while doing paperwork, plaintiff suddenly experienced intense pain across his chest and down into his arm and hand, which then became numb. A doctor was called and plaintiff was taken by ambulance to the hospital.

The hospital records state that plaintiff, "approximately 36 hours prior to his admission, *** began to experience

severe pain located in the right axillary region and radiating down the right arm." An electrocardiogram performed upon plaintiff the evening of his admission disclosed an anterolateral wall myocardial infarction of unknown age.

Defendant argues that the evidence fails to prove a causal relationship between the work incident on April 29, 1977, and the myocardial infarction. This court has held that an accidental injury arises out of and in the course of employment under section 2 of the Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.2) if some act or phase of the employment was a causative factor in the ensuing injury. Plaintiff need not prove that it was the sole causative factor, but only that it was *a* causative factor in the resulting injury. (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 66; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 45.) In numerous cases, the court has found that employment was a causative factor when a heart attack occurred at some point after the employees had left their places of employment. *E.g., McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 357; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17-18; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 240; *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147, 152; *Gould National Batteries, Inc. v. Industrial Com.* (1966), 34 Ill. 2d 151, 157.

In *Gould National Batteries, Inc.,* this court stated:

"It is sufficient if the evidence supports a reasonable inference that the physical stress occasioned by the employee's labor was such that his existing physical structure began to give way or gave way entirely while actually engaged in his employment. [Citations.] Merely because the ultimate manifestation of the basis for the claim * * * does not occur while the employee is actually engaged in the performance of his duties does not require, in our judgment, judicial disturbance of the Industrial Commission's determination that an accidental injury has occurred." 34 Ill. 2d 151, 156-57.

(See *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) Moreover, a preexisting heart condition does not render a compensation award contrary to the manifest weight of the evidence where the Commission, from the evidence, could have inferred that the employee's work-related incident was a causative factor. *Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 66; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 240.

In this case, plaintiff experienced nausea and chest pain from the time of the accident until his admission to the hospital the night of May 1. Defendant avers that plaintiff's statement in the hospital records reveals that severe chest pains began approximately 36 hours prior to admission to the hospital (placing the onset of the chest pains the day after the incident) and that the hospital records fail to refer to the April 29 incident. However, plaintiff gave detailed testimony regarding the onset and duration of his chest pains. In any event, it is the function of the Commission to determine the credibility of witnesses and to resolve disputed questions of fact. *National Lock Co. v. Industrial Com.* (1979), 75 Ill. 2d 259, 264; *Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 142; *United States Steel Corp. v. Industrial Com.* (1976), 65 Ill. 2d 374, 381. Extensive medical testimony was elicited at the hearing. Defendant's expert, Dr. William Buckingham, testified in response to a hypothetical question that an incident like the April 29 one described above would be insufficient to cause the myocardial infarction. He testified that he determined from an enzyme test that the myocardial infarction occurred sometime between May 1 and May 3, 1977, subsequent to the time of the work incident. In his opinion, the infarction was caused by a preexisting arteriosclerotic condition, and accelerated by obesity, hypertension and diabetes. He stated that the chest pain following the work incident could be symptomatic of arthritic changes.

Dr. Buckingham's opinion that the April 29 incident was

not a causative factor in the myocardial infarction was disputed by two physicians testifying for plaintiff. Dr. Paul Sauers, who treated plaintiff subsequent to the myocardial infarction, testified that there was "no question in [his] mind that [plaintiff's] myocardial infarction may well have been precipitated or brought on by his exertion and/or trauma as described." Dr. Sauers also testified, in response to a hypothetical question, that his opinion would not change if the person who suffered the myocardial infarction had been under medication for diabetes and hypertension. Dr. Sauers also stated that the myocardial infarction sustained by plaintiff was probably an evolving infarction, which could have evolved over a course of time, anywhere from hours to days. Finally, Dr. Sauers testified that he had never seen any patient with arthritis have axillary pain.

Plaintiff's other expert, Dr. Nathaniel Greenberg, in response to a hypothetical question, testified that the April 29 work activities directly precipitated an acute myocardial infarction, given an individual with the traits and medical history of plaintiff. He also testified that the pattern of electrocardiographic changes is consistent with the onset of the infarction having occurred within hours to days, thus encompassing the time of the incident.

It is well established that where medical testimony is conflicting, it is for the Commission to determine which testimony is to be accepted. (*Health & Hospitals Governing Com. v. Industrial Com.* (1979), 75 Ill. 2d 159, 163; *McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 357; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18.) It is the Commission's function to determine if a causal relationship existed between employment and claimant's injury, and its judgment will not be disturbed except where it is contrary to the manifest weight of the evidence. *Pulliam Masonry v. Industrial Com.* (1979), 77 Ill. 2d 469, 472; *Health & Hospitals Governing Com. v. Industrial Com.* (1979), 75 Ill. 2d 159, 163-64; *County of Cook v. Industrial*

*Com.* (1977), 69 Ill. 2d 10, 18.

Here, we find the evidence was sufficient to conclude that the April 29 work incident was a causative factor in the ensuing myocardial infarction. Accordingly, the Commission's finding that plaintiff's injury arose out of and in the course of his employment is not contrary to the manifest weight of the evidence and will not be disturbed.

Defendant next argues that the Commission's finding that plaintiff is totally and permanently disabled is contrary to the manifest weight of the evidence. Defendant contends that the medical testimony indicated plaintiff could perform supervisory work or an indoor sedentary job, that the testimony thereby placed the burden on plaintiff to establish his inability to secure employment, and that the burden was not met.

We have often held that an employee is totally and permanently disabled under the Act when "such employee is unable to make some contribution to the work force sufficient to justify the payment of wages." (*E.g., Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 268; *C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278.) However, a claimant is not required to demonstrate total incapacity or helplessness before a permanent total disability award may be granted. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 487; *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 360.) A person is totally disabled when he cannot perform any services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 487; *Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273, 278.) Conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering his health or life, he is not entitled to total and permanent disability compensation. *A.M.T.C. of Illinois, Inc. v.*

*Industrial Com.* (1979), 77 Ill. 2d 482, 488; *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362.

In *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 546-47, this court considered the propriety of a permanent and total disability award and stated:

> "Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market (2 A. Larson, Workmen's Compensation sec. 57.51, at 10—164.24 (1980)), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant (2 A. Larson, Workmen's Compensation sec. 57.61, at 10—164.97 (1980))."

See *Niles Police Department v. Industrial Com.* (1981), 83 Ill. 2d 528, 534-35.

In this case, the medical experts agreed that plaintiff could return to work that required minimal physical stress (thereby distinguishing this case from *Niles Police Department v. Industrial Com.* (1981), 83 Ill. 2d 528, 535, where two experts expressed the opinion that the claimant would have difficulty performing any kind of work; compare *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 547). Dr. Sauers testified that plaintiff should not lift more than 30 to 40 pounds or walk around the field where he is exposed to the sun or high positions. Dr. Greenberg testified that plaintiff would be capable of returning to an indoor sedentary occupation with practically no physical stress and minimum amount of emotional stress, and that

plaintiff should be able to read or write without deleterious effects. Dr. Buckingham testified that plaintiff should be able to return to his duties as supervisor, that he could walk, fill out forms, demonstrate how to do work without performing the work himself, and that he could lift objects weighing not more than 25 pounds. The inability to perform strenuous manual labor does not necessarily make one permanently and totally disabled. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 489.) None of the medical experts testified that plaintiff is totally and permanently disabled. Nor did plaintiff, himself, testify to that effect. In addition, the record reveals that plaintiff's job entailed some degree of paperwork, which he was medically able to perform.

Under these circumstances, plaintiff could not be considered as being "obviously unemployable," thereby preventing his inclusion in the "odd-lot" category. Consequently, the burden remained on plaintiff to show his inability to return to gainful employment. (*Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 547.) This burden may be met by a showing of diligent but unsuccessful attempts to find work (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 490), or by a showing that, in light of plaintiff's age, experience, training and education, he is unable to perform any but the most menial tasks, for which no stable market exists. *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 547; *Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275-76.

Here, neither showing was made. Plaintiff has not shown that he made any effort to obtain work. Indeed, the record does not indicate that plaintiff even attempted to return to Interlake. Nor has plaintiff demonstrated an inability to perform any but the most menial tasks. It is debatable from the record if plaintiff would be precluded from performing his job as supervisor due to limitations in his

permitted physical activity. In any event, as stated above, plaintiff's job included some degree of paper work which, according to the medical evidence, would be within the scope of permitted activity. Notwithstanding his age and ninth-grade education, plaintiff made no showing that the inside work he could perform was unavailable. We conclude that plaintiff has not carried the burden necessary to demonstrate his inability to return to gainful employment. Consequently, we hold the Commission's finding that plaintiff is "wholly and permanently incapable of work" is contrary to the manifest weight of the evidence.

For the above-stated reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and the cause is remanded to the Industrial Commission for further proceedings not inconsistent with the views expressed herein.

*Affirmed in part and reversed in part; cause remanded.*