HENRY MEADOWS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Freeman United Coal Mining Company, Appellee).

Fifth District (Industrial Commission Division)   No. 5—93—0431WC

Opinion filed June 8, 1994.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellant.

Kenneth F. Werts and Nancy R. Kuhnke, both of Craig & Craig, of Mt. Vernon, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Henry Meadows filed an application for adjustment of claim with the Illinois Industrial Commission (Commission) under the Workers' Occupational Diseases Act (Diseases Act) (Ill. Rev. Stat. 1991, ch. 48, par. 172.36 *et seq.*) based on disablement due to a breathing impairment resulting from inhaling coal and rock dust as an employee of respondent Freeman United Coal Mining Company. The arbitrator found claimant was entitled to receive $293.61 per week for 75 weeks for permanent partial disability to the extent of 15% of the man. (Ill. Rev. Stat. 1991, ch. 48, pars. 138.8(d)(2), 172.42.) The Commission adopted the findings of the arbitrator and affirmed the arbitrator's decision. On judicial review, the circuit court of Franklin County found the Commission's decision was supported by the manifest weight of the evidence and confirmed the Commission's decision. Claimant appeals to this court.

The only issue raised on appeal is whether the Commission's decision was against the manifest weight of the evidence. We affirm.

The doctors agree claimant has coal workers' pneumoconiosis. Claimant's date of birth was January 13, 1927. He completed ninth grade. His last day of work for respondent was on December 20, 1986, and he has not worked since. He worked as a coal miner for 41 years. In the mines he worked several job classifications, including machine operator, continuous miner, shuttle car, and about every classification underground. He worked as an examiner for 12 years before he bid off the job to get a job above ground. On top, he had a pumping job, he worked as a "dozer" operator, and in his last two years, he was a diesel mechanic. Claimant did not leave his employment with respondent for health reasons, although claimant stated he had breathing problems and he became dizzy on exertion. When the mine in which he was working shut down in 1986, he would have liked to work two more years. The reason he elected not to go work in another mine was that, although he could bid for another job, his seniority would be low and he was concerned he would have to work as a laborer. He felt he could not physically handle that job. He did not know if there was a job available. He did not try to get a job in another mine. He knew that if he went on another panel, he would be behind everyone in terms of seniority, but he did not know what jobs were available because he never got on a panel.

After being laid off, claimant collected unemployment for six

months and then looked for a job. Claimant testified he sought work as a mechanic at several garages. He identified three: Taylor Motors in Benton, Marion Ford, and Kretz in Christopher. He was not offered a job in these places and was not given a physical examination for employment for any jobs with these employers. When asked why he did not get a job in these places, claimant testified only that Marion Ford "point blank rejected me."

Dr. William Charles Houser, a pulmonary specialist, testified he saw claimant for an evaluation on November 3, 1988, at the request of claimant's attorney. Claimant had coal miners' pneumoconiosis. Claimant "has quite a bit of dust already deposited in his lungs and scarring and fibrosis." Additional exposure could lead to further progression of the disease, further shortness of breath, and pulmonary function impairment. According to Houser, there is a 1-in-20 chance that coal miners' pneumoconiosis will progress even when the patient is removed from the environment containing coal dust. On the other hand, coal miners' pneumoconiosis may not progress even with additional exposure. Claimant's pneumoconiosis is a category 2 simple pneumoconiosis, which means there is some loss of normal vascular markings. However, claimant's pulmonary function is close to normal. Claimant was 61 years old at the time of the examination, could walk a mile or climb two flights of stairs without becoming short of breath, and left work because of the closing of the mine. He did not tell the doctor he left work because of breathing problems or based on the recommendation of a physician. From a physical standpoint, claimant was capable of gainful employment at the time of the examination. Claimant's forced vital capacity (FVC) was 100% of predicted, and his forced expiratory capacity (FEV-1) was 100% of predicted. There was a mild reduction in the FEV-1 to FVC ratio, but it was minimal. Houser concluded that the testing revealed a mild impairment. Houser testified it was the position of the American Thoracic Society that subjects with no or mild impairment would be able to perform all but the most unusually physically demanding of jobs, and he did not disagree with that.

Dr. Susan Marshall, a pulmonary physician, saw claimant for evaluation on November 16, 1989, at respondent's request. Marshall concluded that claimant had category 1 simple coal miners' pneumoconiosis. She did not think that claimant had any pulmonary function disability, but a person can have pneumoconiosis and have no associated respiratory impairment. She also diagnosed that claimant had chronic bronchitis, but she did not know that chronic bronchitis was any more frequent in persons exposed to coal dust than it was in the general population. Chronic bronchitis can also be present

without any abnormality of pulmonary function shown by testing. Coal workers' pneumoconiosis is irreversible. It is possible that further exposure will not result in further progression of the condition, and if work was desirable to earn wages, a person could return to work in the mines and be monitored for any difficulty arising from continued exposure. There is a small possibility the condition could progress in the absence of further exposure to coal dust. Claimant did develop marked systolic hypertension which caused the discontinuation of the exercise test, but he had already reached 99% of his maximum predicted oxygen uptake. Marshall stated pneumoconiosis is not related to hypertension. According to Marshall, it was the position of the American Thoracic Society that a worker with a mild pneumoconiosis would be able to work at permissible exposure levels. Claimant told Marshall that he was laid off during a period of low work volume and then took voluntary retirement two years before he was due to retire.

Claimant argues the award is too small. Claimant believes he should have been found to be eligible for permanent total disability (PTD) benefits. The Commission's decision will not be set aside on review unless its findings are against the manifest weight of the evidence. The test of whether the decision is against the manifest weight of the evidence is whether there was sufficient factual evidence to support it. (*Benson v. Industrial Comm'n* (1982), 91 Ill. 2d 445, 450, 440 N.E.2d 90, 93.) It is the function of the Commission, not the appellate court, to assess the credibility of witnesses, resolve conflicts in the evidence, weigh the evidence, draw reasonable inferences from the evidence, and determine the questions of fact. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 483, 548 N.E.2d 1033, 1040.) The appellate court will not substitute its judgment for that of the Commission simply because different inferences could have been drawn from the evidence. *Hutson v. Industrial Comm'n* (1992), 223 Ill. App. 3d 706, 715-16, 585 N.E.2d 1208, 1215.

On appeal, claimant argues the evidence he presented at the hearing before the arbitrator was sufficient to establish a *prima facie* case of fitting into the "odd lot" category under section 8(f) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(f)), which applies to occupational diseases through the first paragraph of section 7 of the Diseases Act (Ill. Rev. Stat. 1991, ch. 48, par. 172.42).

If the claimant is not obviously unemployable or if there is no medical evidence to support a claim of PTD, the claimant has the burden of proving that he fits into the "odd lot" category of section 8(f) of the Act by producing evidence that he is so handicapped he

will not be employed regularly in a well-known branch of the labor market. (*Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 286-87, 447 N.E.2d 842, 845-46 (citing *Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 177, 427 N.E.2d 103, 107-08, and *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159, 1163).) Once claimant makes a *prima facie* showing of fitting into the odd-lot category, the burden of proof shifts to the respondent employer to produce evidence that some type of regular and continuous employment is available to the claimant. (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 362, 376 N.E.2d 206, 210.) As stated in *Ceco Corp.*, the Commission, in determining whether claimant fits into the odd lot, may consider the age of the claimant and his skills, training, and work history. (*Ceco Corp.*, 95 Ill. 2d at 287, 447 N.E.2d at 845.) Claimant concedes that he is not obviously disabled and the medical evidence alone was insufficient to qualify him for PTD benefits.

Claimant has not made out a *prima facie* case of fitting into the odd-lot category. First, claimant did not retire for health reasons and could have continued to work for respondent at another mine. He quit working in the mines because he assumed he would have to take a laborer job without ever going through the process of finding out what jobs were available to him. Second, in order to be eligible for unemployment insurance benefits, an individual must be able to work, available to work, and actively seeking work as certified on the form provided by the Department of Employment Security listing the places at which he sought work. (Ill. Rev. Stat. 1991, ch. 48, par. 420(C).) Third, there is no evidence of any physical restrictions placed on claimant by a physician or the types of jobs which claimant was unable to do, except perhaps the most unusually physically demanding of jobs. The doctors did not even rule out that claimant could return to a job in a coal mine. Fourth, claimant testified he looked for work only as a mechanic and specifically identified only three garages at which he sought employment. There was no evidence that this was the only type of work which claimant was capable of doing, and there was no evidence that his alleged disability was the reason he did not get a job with any of these three prospective employers. Indeed, there was no evidence that these garages had jobs available when claimant went there. On this record, it cannot be determined if, for example, Marion Ford had no jobs available or had jobs available in sales, the parts department, or building maintenance about which claimant did not inquire.

Distinguishable from this case are claimant's cited cases of *Zeigler Coal Co. v. Industrial Comm'n* (1992), 237 Ill. App. 3d 213, 604

N.E.2d 481, and *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 609 N.E.2d 339. In *Zeigler Coal*, claimant testified he was no longer able to do any work, Dr. Khan testified it would be injurious for claimant to work in the coal mines or any other occupation, and Dr. Tuteur testified that claimant's health problems and weakness would prevent claimant from being gainfully employed as a coal miner and characterized claimant's disability as total and permanent. (*Zeigler Coal*, 237 Ill. App. 3d at 215-17, 604 N.E.2d at 482-84.) In *Monterey Coal* (241 Ill. App. 3d at 389, 609 N.E.2d at 341), Dr. Kahn opined that the claimant in that case was " 'not a suitable candidate to perform any other gainful employment.' " This case is devoid of such evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Franklin County, confirming the Commission's decision.

Affirmed.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.