JUDITH CLARK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (The City of Prospect Heights, Appellee.)

First District (Industrial Commission Division)   No. 1—94—1630WC

Opinion filed November 3, 1995.

McCULLOUGH, P.J., dissenting.

430

Cullen, Haskins, Nicholson & Menchetti, of Chicago, for appellant.

Kubiesa, Power & Adams, Ltd., of Oakbrook Terrace, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Judith Clark, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained on June 26, 1990, while working for the City of Prospect Heights (City). The arbitrator awarded claimant 106⁵/₇ weeks of temporary total disability benefits. On appeal, the Industrial Commission (Commission) reduced the award to 69 weeks, and the circuit court of Cook County confirmed the Commission's decision. Claimant appeals, contending the decision to reduce the award of temporary total disability benefits is against the manifest weight of the evidence. We agree and reverse the decision of the Commission as confirmed by the circuit court.

On June 26, 1990, claimant, then a 43-year-old part-time secretary for the City, attempted to answer a telephone on the other side of her desk. As she tried to reach the phone, she caught her leg on a table and fell to her left side. She noticed sudden pain in the left side of her back, pain which progressively got worse. By 2 a.m. on June 30, claimant went to the emergency room at Northwest Community Hospital. Upon returning from the emergency room, claimant called her supervisor to report the accident. The supervisor instructed her to go to another hospital where the City had an arrangement for the treatment of industrial injuries. Claimant went to the second hospital, Glenbrook, for emergency room treatment. At Glenbrook, claimant was advised to remain on bed rest for two or three days.

On the morning of July 1, 1990, claimant experienced a severe spasm in her leg as she attempted to get out of bed. She fell and was unable to walk or move. Claimant returned to Glenbrook by ambulance where she remained through July 6 under the treatment of Drs. Gonzales and Eller. During this time, claimant underwent a CT scan of the lumbar spine which revealed a large left lateral disk herniation at L5-S1 with compression of the left nerve root and bulging of the L4-5 and L3-4 disks. Upon discharge, claimant was instructed to stay off work, remain in bed and get help at home. Claimant continued to see Dr. Gonzales on an out-patient basis.

Claimant's pain did not subside. In addition to the pain in her back and left leg, claimant also experienced numbness in her left leg, nausea and insomnia. Dr. Gonzales prescribed physical therapy and a custom brace. On July 17, claimant underwent an EMG study, which revealed L5-S1 radiculopathy and prolonged distal motor laten-

cies and prolonged nerve conduction velocities of the left tibial nerve. Eventually claimant was referred to Dr. Levin. Dr. Levin examined claimant on October 15, 1990, and recommended she undergo surgery or learn to live with the condition. On February 8, 1991, claimant underwent two-level laminectomy surgery at L4-5 and L5-S1. Postoperative treatment with Dr. Levin was discontinued on June 19, 1991. Following her surgery, however, claimant continued to experience back and lower limb pain and numbness and difficulty with almost any kind of physical activity. She returned to Dr. Gonzales for treatment. Findings of an EMG conducted in August 1991 revealed nerve damage affecting both the right and left side. Dr. Gonzales diagnosed chronic lumbar radiculopathy or chronic nerve damage and segmental instability of the lumbar spine. Dr. Gonzales also opined claimant was not able to return to work and needed a custom brace to help her condition.

On October 23, 1991, claimant was examined by Dr. Spencer at the City's request. According to claimant, Dr. Spencer concurred with the diagnosis of segmental instability of the lumbar spine and agreed a back brace was needed. A nurse retained by the City to perform medical management, who met with Dr. Spencer after claimant's examination, stated Dr. Spencer admitted that there was instability of the disk which would take time to improve and that a back brace was needed. The nurse relayed this same information to Dr. Gonzales, who, in turn, noted Dr. Spencer's findings in his records. Some eight months later, however, Dr. Spencer opined in a deposition that claimant's complaints were spurious. He found no evidence of spinal instability and believed a back brace was unnecessary. He further stated claimant could return to work and perform regular secretarial duties. The arbitrator concluded Dr. Spencer was not credible and disregarded his testimony. The Commission chose to adopt the findings of Dr. Spencer as set forth in his deposition.

■ Causation is not at issue here; nor is the fact that claimant's injury occurred during the course of her employment. What is contested is claimant's ability to return to work. While it is the province of the Commission to weigh and resolve conflicts in the evidence, including medical testimony, and to choose among conflicting inferences therefrom (see *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037), when the decision of the Commission is without substantial foundation in the evidence or its findings are manifestly against the weight of the evidence, we must set aside such findings and decision (see *Montgomery Elevator Co. v. Industrial Comm'n* (1993), 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 824-25). Here the plain and indisputable weight of the evidence

compels an opposite conclusion. We therefore reverse the decision of the Commission and reinstate that of the arbitrator.

■ The manifest weight of the evidence reveals claimant still is unable to return to work. Dr. Gonzales, claimant's treating physician and *an agent of the City*, diagnosed chronic lumbar radiculopathy and segmental instability of the lumbar spine. Such conditions cause claimant to suffer extreme pain-to the extent she can only sit or stand for short periods of time. The only way to relieve some of the pain is to immobilize the spine, which means lying down for a significant portion of each day. Claimant's condition has not stabilized and probably will not without the use of a custom back brace. The initial reports prepared by Dr. Spencer, again the City's doctor, supported Dr. Gonzales' diagnosis. All of the medical tests confirmed the same diagnosis. The only evidence to the contrary, and the only conflicting evidence, was Dr. Spencer's own deposition testimony taken some eight months after his examination of claimant. The weight of the medical testimony, however, favors claimant, and Dr. Spencer's testimony does not serve to overcome the rest of the evidence. (See *Edgcomb v. Industrial Comm'n* (1989), 181 Ill. App. 3d 398, 536 N.E.2d 1364.) In fact, Dr. Spencer's inconsistent statements render his testimony suspect. Yet, the Commission chose to adopt Dr. Spencer's deposition testimony to reverse the arbitrator's decision even though such testimony is contradicted by every other piece of evidence in the record. While we usually are reluctant to overturn a decision of the Industrial Commission on a factual question, we must do so when that decision clearly is against the manifest weight of the evidence.

For the foregoing reasons, we reverse the decision of the Cook County circuit court confirming the decision of the Industrial Commission and reinstate the decision of the arbitrator.

Reversed.

RAKOWSKI, COLWELL and McCUSKEY, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

The Commission decision to award temporary total disability (TTD) for 69 weeks was not against the manifest weight of the evidence. The medical testimony was that of Dr. Gonzales, claimant's treating physician, and Dr. Spencer, an orthopedic specialist. The evidence presented by each doctor was in direct conflict as to claimant's ability to return to work. The Commission adopted "the findings of Dr. Spencer and accordingly finds that petitioner was temporarily totally disabled through October 23, 1991," for a period of 69 weeks at the rate of $610.97 per week.

As pointed out by the majority, the only issue is whether the Commission's decision to award 69 weeks TTD was against the manifest weight of the evidence. On the October 23, 1991, date, Dr. Spencer opined that claimant was capable of returning to her regular work as a secretary. The claimant argues that Dr. Spencer's testimony was not believable and did not reflect the examination he conducted.

As the trial judge stated, the Commission's decision is clearly supported by the evidence in the record "notwithstanding the claimant's rather dubious attack of Dr. Spencer's credibility."

Dr. Spencer conducted his examination of claimant after claimant's lumbar laminectomy. He testified, "based on the spurious neurologic examination, it was difficult for me to attribute any validity to the subjective complaints; and, so, I felt that there were no objective—there was no objective evidence to substantiate the neurologic complaints that she had." He also recommended "she should return to work as a secretary."

This is a classic case of manifest weight. We should not usurp the Commission's prerogative. The only issue is the extent of TTD. The Commission believed Dr. Spencer that claimant could return to work as a secretary.

The circuit court's decision confirming the Commission's decision should be affirmed.