ZEIGLER COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John Waggoner, Appellee).

Fifth District (Industrial Commission Division) No. 5—91—0809WC

Opinion filed November 25, 1992.

Wayne R. Reynolds, of Law Offices of Wayne R. Reynolds, P.C., of Belleville, for appellant.

Harold B. Culley, Jr., of Raleigh, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

On April 23, 1986, claimant, John A. Waggoner, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 172.36 *et seq.*). He alleged impairment to his heart and lungs due to inhalation of coal and rock dust during a 40-year period of employment with respondent, Zeigler Coal Company. After a hearing held on September 14, 1989, the arbitrator found that claimant's condition of ill being was causally related to his employment and that it arose out of

and in the course of his employment. Further, the arbitrator found that claimant was totally and permanently disabled. A majority of the Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court confirmed the Commission's decision. This timely appeal followed.

On appeal, respondent raises two arguments, namely, (1) the Commission's decision regarding the extent and permanency of claimant's disability is against the manifest weight of the evidence; and (2) claimant failed to prove he sustained disablement due to an occupational disease within the two-year period required by the Act.

At the arbitration hearing, claimant stated that he was born in 1923. He had worked for respondent a total of 40 years. For the first 35 years, he worked underground in a variety of jobs: shuttle car operator, electrician and battery maintainer. The last five years, claimant worked on the surface as a heavy equipment operator. Both underground and on the surface, he was continuously exposed to coal and rock dust. Claimant first noticed breathing problems in 1978 or 1979. Specifically, he was often short of breath, a condition which made it harder to perform his work tasks. On September 24, 1985, at the age of 62, he terminated his employment with respondent due to his continued respiratory problems. He stated that he was no longer able to do any work. After his retirement, claimant needed two pillows to sleep and also a fan to blow over his head so that he got enough air.

Claimant had smoked cigarettes since his second or third year in high school. For many years, he smoked one pack of cigarettes per day. As of the arbitration hearing, he smoked one-half a pack per day.

On cross-examination, claimant testified that he had never been hospitalized for breathing problems. He had taken an unspecified medication prescribed by Dr. Saeed Khan, but it offered no symptom relief.

On November 6, 1987, claimant was examined by Dr. Saeed Khan, board certified in internal medicine. Claimant told Dr. Khan that he could only walk one block before getting short of breath and could hardly climb one flight of stairs without becoming winded. His shortness of breath upon slight exertion had become worse during the past five years. He also experienced a productive cough. Claimant told Dr. Khan that he retired because of his breathing difficulties.

A physical examination showed bilateral rhonchi (rattling sound) and basal crepitations. Claimant was also slightly dyspneic or short

of breath and cyanosed with blue lips at rest. Cyanosis indicates that there is a decreased amount of oxygen in the tissues due to either heart disease or lung damage. Dr. Khan reviewed an X ray taken on October 27, 1987, and found bilateral interstitial fibrosis and hypertranslucency which is consistent with emphysema and coal workers' pneumoconiosis. The pulmonary function study and blood-gas tests performed by Dr. Khan also showed a restrictive lung disease consistent with emphysema and coal workers' pneumoconiosis.

Dr. Khan concluded that claimant had both emphysema and pneumoconiosis. In his opinion, claimant's pneumoconiosis was caused by his work in the coal mines, while his emphysema was caused by both his smoking and coal mine employment. It was impossible to quantify how much of his emphysema was caused by smoking and how much was caused by coal mining. Dr. Khan concluded that because of claimant's history of shortness of breath, his ability to walk only one block and his abnormal tests and X rays, it would be injurious for him to work in the coal mines or any other occupation.

On April 7, 1988, claimant was examined by Dr. William C. Houser, who is board certified in internal medicine and pulmonary disease. Claimant complained of shortness of breath at rest and upon exertion for the past seven to eight years along with a daily productive cough. Upon physical examination, Dr. Houser noted that scattered rhonchia were present, especially on expiration. Slightly diminished breath sounds denoted decreased air movement which could imply fluid in or damage to the lung. Claimant's pulmonary function tests suggested a small airway obstruction. A chest X ray showed opacities which indicated the presence of pneumoconiosis. In reaching his opinion, Dr. Houser considered records from Drs. Khan and Sanjabi. He concluded that the claimant had pneumoconiosis, which was caused by his 40 years of coal mining employment. Dr. Houser also testified that claimant had chronic bronchitis which was caused by both his coal mining employment and his smoking history. There was no way to quantify how much each process contributed to this disease. Dr. Houser recommended that claimant avoid further exposure to coal dust.

Dr. T.R. Marshall also testified for claimant via an evidence deposition taken on October 31, 1989. Dr. Marshall is a board-certified radiologist and B Reader whose practice consists of occupational disease cases and general radiology. At claimant's request, Dr. Marshall reviewed chest X rays taken of claimant on April 7, 1988, and July 1, 1988. Both films revealed stage 2 pneumoconiosis

in the claimant's lungs. Dr. Marshall opined that inhalation of coal and rock dust over a long period of time caused claimant's pneumoconiosis.

Dr. Barton Bridges testified for respondent via an evidence deposition taken on June 30, 1989. Dr. Bridges, a radiologist, examined four X rays taken of claimant's chest. He found no evidence of pneumoconiosis in the chest X rays. On cross-examination, Dr. Bridges agreed that a person with a normal X ray can still have pneumoconiosis. The doctor also agreed that the 1988 X rays showed evidence of emphysema, which can be caused by coal mining.

On July 1, 1988, Dr. Peter Tuteur examined claimant at respondent's request. An evidence deposition of Dr. Tuteur was taken on July 12, 1989. Claimant complained to Dr. Tuteur of extreme fatigue, breathlessness and a regular cough. Based upon the results of a physical examination, a pulmonary function study, a blood-gas study, a chest X ray and medical data from Drs. Khan and Houser, Dr. Tuteur concluded that claimant had "at worst" a trivial obstructive ventilatory defect, which was due to claimant's cigarette smoking. Dr. Tuteur did not believe that claimant suffered from any disease caused or aggravated by his exposure to coal mine dust. He stated that his opinion lacked the benefit of any histologic data and that without such data it was impossible to rule out entirely the possibility of pneumoconiosis in claimant's lungs.

Dr. Tuteur acknowledged that breathlessness is consistent with a diagnosis of pneumoconiosis. He further stated that it was "remotely possible" that the abnormality found on claimant's pulmonary function study could be secondary to the inhalation of coal dust. Dr. Tuteur stated that someone with pneumoconiosis should no longer be exposed to continued inhalation of coal dust. Regarding an overall impairment, Dr. Tuteur stated that claimant's health problems, especially his weakness, would prevent him from being gainfully employed as a coal miner. He characterized claimant's disability as "total and permanent."

Respondent first argues that claimant failed to prove that he sustained disablement due to an occupational disease within the two-year period as required by section 1(f) of the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 172.36(f).) Respondent relies heavily on this court's decision in *Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16. Specifically, respondent argues that there is no evidence in the record which establishes the onset of occupational dis-

ease-related disablement within two years of September 24, 1985, when claimant was last exposed to coal dust.

In response, claimant asserts that the record contains sufficient evidence that his disablement occurred within the two-year statutory period.

Initially, we note that it is the Commission's province to judge the credibility, *to draw reasonable inferences from the testimony* and to determine what weight the testimony is to be given. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468.) Further, it is the Commission's province to resolve conflicts in medical evidence. (*Amoco Oil Co. v. Industrial Comm'n* (1991), 218 Ill. App. 3d 737.) The Commission's decision on a question of fact will not be disturbed unless it is contrary to the manifest weight of the evidence. *Paganelis*, 132 Ill. 2d at 484.

The relevant statute provides:

> "No compensation shall be payable for or on account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." Ill. Rev. Stat. 1985, ch. 48, par. 172.36(f).

Respondent's reliance upon *Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16, is misplaced. In *Goodson*, the wife of the deceased worker did not argue that he was disabled at any time between the date of his last exposure and his death, a period of approximately seven years. Thus, *Goodson* provides no guidance in the appeal at bar, where claimant maintains that his disablement occurred within the two-year statutory period.

Moreover, the evidence supports the Commission's conclusion that claimant's disablement had occurred within the statutory period. Claimant stopped working on September 25, 1985. On November 6, 1987, Dr. Khan reviewed an X ray taken of claimant's chest on October 27, 1987. Dr. Khan interpreted said X ray as revealing the presence of coal workers' pneumoconiosis in claimant's lungs. Thus, there was medical evidence that as of October 27, 1987, approximately one month after the statutory period had

elapsed, claimant's lung had the subject disease. Dr. Khan described coal workers' pneumoconiosis as a "chronic, slowly progressive lung disease." Given the nature of this lung disease, the Commission permissibly inferred that the chronic, slowly progressive disorder present in claimant's lung on October 27, 1987, was also present within his lungs during the statutory period which elapsed on September 24, 1987. Supporting this inference is claimant's testimony that since the late 1970's he had breathing problems. Further, claimant gave each examining physician a history of respiratory symptoms, including a sputum-producing cough and shortness of breath for seven or eight years prior to his retirement. From this record, we find that the Commission's finding regarding this issue was not against the manifest weight of the evidence.

Respondent's other contention is that the Commission erred in finding that claimant was totally and permanently disabled. Specifically, the Commission found that claimant was "totally disabled from being gainfully employed as a coal miner or other comparable and gainful work." Respondent contends that the Commission did not find claimant disabled from all work and that claimant never proved he was totally and permanently disabled within the meaning of the Act. Claimant maintains that the Commission's decision is not against the manifest weight of the evidence.

A person is totally and permanently disabled for the purpose of workmen's compensation benefits when he is unable to make some contribution to industry sufficient to justify payment of wages to him. (*A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482.) However, a claimant need not be reduced to total physical incapacity or helplessness to be found totally and permanently disabled. (*A.M.T.C. of Illinois, Inc.*, 77 Ill. 2d at 487.) A person is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. *Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273.

Initially, we find that the Commission did determine that claimant was totally and permanently disabled. In this context, the Commission's finding that claimant could not work in coal mining or in a comparable occupation was tantamount to finding that claimant could perform no gainful employment.

As to whether claimant proved his total and permanent disability, claimant testified that he was 66 years old and had worked all of his adult life in coal mines. He stated that he was unable to per-

form any type of work. Drs. Khan and Houser opined that claimant should not be exposed further to coal and rock dust. This prohibition coupled with claimant's age, lack of training in any other job and his physical limitations supports the Commission's determination that there is no reasonably stable market for his services. Thus, the Commission's finding that claimant is totally and permanently disabled is not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, STOUDER, and H. LEWIS, JJ., concur.