MONTEREY COAL COMPANY, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Louis LaFuria *et al.*, Appellees).

Fourth District (Industrial Commission Division)   No. 4—91—0902WC

Opinion filed December 3, 1992.—Rehearing denied March 30, 1993.

L. Robert Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Harold B. Culley, Jr., of Raleigh, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

On March 27, 1986, claimant, Louis LaFuria, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 172.36 *et seq.*). Said application alleged that claimant had sustained impairment of his heart and lungs due to his employment with respondent, Monterey Coal Company. On December 11, 1989, this matter was heard by an arbitrator, who subsequently determined that claimant was totally and permanently disabled due to the effects of an occupational disease. A majority of the Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court of Macoupin County confirmed the Commission's decision. This timely appeal followed.

Respondent raises four issues, namely: (1) whether the Commission erred in finding that claimant had proved disablement under section 1(f) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 172.36(f)); (2) whether the Commission erred in finding that claimant had coal workers' pneumoconiosis; (3) whether the Commission erred in finding a causal connection between claimant's coal workers' pneumoconiosis and his condition of ill-being; and (4) whether the Commission erred in finding that claimant was permanently and totally disabled.

At the arbitration hearing, claimant testified that he last worked for respondent on August 3, 1983. On said date, he was 65 years old and had worked as a coal miner approximately 37 years for various coal companies, the last of which was respondent. Claimant had worked as a coal shooter, coal driller and mine examiner. He was con-

stantly exposed to and inhaled coal and rock dust. Claimant was last exposed to coal dust on August 3, 1983.

Claimant stated that he would have continued working but for his breathing difficulties. He had first experienced breathing problems eight years prior to his retirement. Working as a mine examiner, a job which required extensive walking, claimant noticed that he had trouble breathing while walking. Claimant's breathing problems worsened after he retired. As of the arbitration hearing, he could do little physical activity before losing his breath. Claimant had trouble sleeping, often having to get up to gasp for air. Further, claimant had a cough which had worsened over time.

Claimant described numerous physical problems. He had two back surgeries in 1986 and has since walked with a limp. In 1967, claimant had one-half his stomach removed due to ulcers and has undergone prostate surgery. Additionally, he has a prosthetic right eye and has hearing difficulties. Claimant smoked cigarettes for 15 years until the age of 35.

On April 14, 1986, Dr. Parviz Sanjabi examined claimant to evaluate his lungs. In a letter written to claimant's counsel on the same date, Dr. Sanjabi stated that claimant's principal complaint was a reduced tolerance to exercise. Claimant related a history of shortness of breath when going up inclines or climbing steps. Claimant had no regular cough or sputum production but did have occasional periods of coughing which produced sputum. A chest X ray indicated mild simple pneumoconiosis and some linear densities bilaterally.

Dr. Saeed Khan testified via an evidence deposition taken on December 7, 1989. Board certified in internal medicine, Dr. Khan estimated that 15% of his practice consists of the care and treatment of coal miners with lung and associated pulmonary diseases. He examined claimant on March 5, 1987. Dr. Khan took claimant's history, noting complaints of morning cough for the previous eight years and an increased shortness of breath on exertion over the prior three years. Claimant also described coughing and wheezing spells and chest tightness. Claimant told Dr. Khan he was taking medication prescribed by his family physician, which was intended to aid his breathing. In his physical examination of claimant, Dr. Khan observed that he was short of breath even when at rest. The results of pulmonary function studies were consistent with coal workers' pneumoconiosis, emphysema and restrictive lung disease. Further, the results of blood gas studies were also consistent with coal workers' pneumoconiosis and emphysema. Chest X rays revealed hypertranslucency on both sides and interstitial pulmonary fibrosis consistent with coal workers'

pneumoconiosis and emphysema. Dr. Khan described coal workers' pneumoconiosis as "a chronic slowly progressive disease," which continues to progress even when the person is removed from exposure to coal and rock dust.

Based upon claimant's history, the physical examination, X ray and test results, Dr. Khan concluded that claimant was "not a suitable candidate to perform any other gainful employment."

Dr. Ludimere Lenyo testified for claimant in an evidence deposition taken on June 14, 1989. Dr. Lenyo, board certified in internal medicine, examined claimant on April 26, 1988. Dr. Lenyo estimated that 30% of his practice dealt with pulmonary problems. He had extensive experience with coal workers' pneumoconiosis patients. At the subject examination, claimant described shortness of breath upon exertion which made it impossible to do household chores. He became exhausted by going up an incline for 30 to 40 feet. Claimant also related a history of coughing and sputum production. Dr. Lenyo's physical examination of claimant revealed an interstitial lung disease, which results in the scarring of the lungs and the substantial limitation in their ability to expand. Pulmonary function studies also revealed interstitial lung disease consistent with claimant's history and physical examination. A chest X ray taken during the examination revealed a profusion of small irregular opacities in the lower, middle and upper lung zones. Dr. Lenyo concluded that these opacities were caused by exposure to coal dust. He opined that claimant had coal workers' pneumoconiosis, caused by his employment. Dr. Lenyo described coal workers' pneumoconiosis as a permanent and incurable condition which gradually worsens over the years. He stated that additional exposure of claimant to coal dust would endanger his health. Further, Dr. Lenyo indicated that claimant's condition had continued to worsen even after his retirement.

In March 1989, Dr. Peter Tuteur examined claimant at respondent's request. Dr. Tuteur is board certified in internal medicine, with a subspecialty in pulmonary diseases. Testifying by evidence deposition taken on August 2, 1989, Dr. Tuteur stated that claimant gave him a medical history which included his inability to climb more than one flight of stairs or to walk more than four blocks due to shortness of breath. Claimant also reported that he had a daily cough which produced whitish-yellow sputum. He also described awakening at night, wheezing and breathless. This condition necessitated him getting up, walking around and expectorating for relief.

Dr. Tuteur's physical examination of claimant revealed that his breathing sounds were normal and that occasional wheezes were

heard during the forced expiratory volume maneuvers. Chest X rays taken of claimant during this examination were read by Dr. Tuteur as showing no evidence of coal workers' pneumoconiosis. Blood gas studies demonstrated a mild obstructive ventilatory defect, which improved significantly with the administration of a bronchodilator. Dr. Tuteur concluded that claimant had chronic bronchitis, the cause of which was possibly related to claimant's previous cigarette consumption but more likely due to claimant's peptic ulcer disease, which potentially caused regurgitation and aspiration.

Respondent first argues that claimant failed to prove disablement under section 1(f) of the Act. Specifically, respondent maintains that claimant provided no medical evidence to support his contention that his disablement occurred within the statutory two-year period. Respondent also argues that claimant's testimony was sufficiently contradictory and incredible that his testimony alone was not sufficient to prove disablement within two years after his retirement in 1983.

Claimant asserts that respondent has waived this issue by failing to raise it before the arbitrator. Claimant further maintains claimant's disablement was proved both by his testimony and that of Drs. Khan, Sanjabi and Lenyo.

■■ We initially address claimant's argument that respondent waived this contention. The issue was apparently before the Commission. The majority's decision and the dissent both addressed the issue of whether claimant's disablement occurred within the statutory period, despite the fact the record does not show that respondent specifically made this argument. Accordingly, we find that this issue is properly before us.

It is the Commission's province to draw reasonable inferences from the evidence and to determine what weight the evidence is to be given; its decision on a question of fact will not be disturbed unless it is against the manifest weight of the evidence. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.) Where the inferences drawn by the Commission are reasonable, a court of review will not discard them merely because other inferences could be drawn from the evidence. *Warren v. Industrial Comm'n* (1975), 61 Ill. 2d 373, 335 N.E.2d 488.

■■ The relevant statute provides:

"No compensation shall be payable for on or account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or

asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." Ill. Rev. Stat. 1985, ch. 48, par. 172.36(f).

Concerning the issue of whether claimant proved his disablement, his testimony indicates that he was disabled upon his retirement, after approximately 37 years of coal mining. His breathing problems prevented him from fulfilling his work duties with respondent. He had experienced significant breathing problems eight years prior to his retirement.

Moreover, claimant gave physical histories to his examining physicians which included shortness of breath, periodic coughing with occasional sputum production and inability to perform any tasks requiring exertion.

Dr. Khan examined claimant approximately 19 months after the relevant statutory disablement period had ended. In Dr. Khan's deposition, the following colloquy took place:

"Q. You indicated that it's possible for coal workers' pneumoconiosis to progress after removal from coal dust exposure; is that correct?

A. It is a *chronic, slowly progressive disease* and after— even after removing the patient from that environment the disease goes on in progression and eventually they get cor pulmonale or pneumonia or heart failure due to lung disease and they die. That is the usual terminal cause of these patients.

Q. Is every individual that has, in your opinion, coal workers' pneumoconiosis, are they all going to progress with the disease like that or will some just stay the same as they are once they leave the coal dust exposure:

A. Vast majority of those will *progress slowly over the years.*

Q. Okay. And what's the basis of your opinion about that, Doctor?

A. Well, basis of this opinion is medical information obtained from the medical knowledge." (Emphasis added.)

Dr. Lenyo examined claimant approximately 33 months after the subject disablement period had expired. Dr. Lenyo found it significant that claimant had symptoms of chronic lung diseases. Moreover, the findings of Dr. Lenyo's physical examination of claimant confirmed claimant's medical history. Dr. Lenyo described coal workers' pneumo-

coniosis as a permanent and irreversible condition, which *gradually worsens* over the years.

Further, Dr. Sanjabi, who examined claimant approximately eight months after the close of the statutory disablement period, found evidence of mild simple pneumoconiosis, with minor linear densities present.

The Commission determined that claimant was disabled on August 3, 1983, the date of his retirement. The Commission found that claimant's testimony was credible and that it was supported by the medical histories he gave the examining physicians and the testimony of Drs. Khan and Lenyo.

■ We find that the record supports the Commission's determination of the disablement issue. Of particular importance is the subject disease's progression. Both Dr. Khan and Dr. Lenyo, who have substantial experience in dealing with coal workers' pneumoconiosis patients, describe the disease as chronic and *slowly progressive.* In other words, this lung disorder does not simply manifest itself in a short period but, instead, proceeds in a gradual and evermore debilitating manner over a number of years. Therefore, we reject respondent's argument that, because Drs. Khan and Lenyo examined claimant several years after the statutory period expired, their opinions should have no influence in determining this issue.

Based upon claimant's testimony, the medical histories he gave examining physicians and the testimony of Drs. Khan and Lenyo, the Commission permissibly inferred that claimant's disablement occurred within the statutory period.

■ Next, respondent contends that the Commission's finding that claimant had coal workers' pneumoconiosis was against the manifest weight of the evidence. In effect, respondent maintains that the testimony of its examining physician should be given more weight than that of Drs. Khan and Lenyo. In response, claimant argues that there is ample evidence to support the Commission's finding. It is for the Commission to decide which of two conflicting opinions is to be accepted. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) Making actual determinations is primarily the Commission's function. A court of review will not overturn its findings unless they are contrary to the manifest weight of the evidence. *C.D. Turner & Sons, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 231, 449 N.E.2d 836.

Dr. Sanjabi determined that, based upon his reading of a chest X ray, claimant had simple mild pneumoconiosis. Dr. Khan diagnosed claimant's condition as coal workers' pneumoconiosis. Dr. Lenyo de-

termined that claimant had coal workers' pneumoconiosis. The fact that Dr. Tuteur came to an opposite conclusion is not a sufficient basis upon which to overturn the Commission's finding as to this issue.

■ Next, respondent contends that claimant did not prove a causal relationship between claimant's pneumoconiosis and his condition of ill-being. Claimant argues that the record supports the Commission's finding. It is within the province of the Commission to determine questions concerning causal connection, and its findings will not be overturned unless they are against the manifest weight of the evidence. *Frigo v. Industrial Comm'n* (1990), 199 Ill. App. 3d 880, 557 N.E.2d 624.

Claimant testified that he was exposed to coal and rock dust on a daily basis during his 37 years of employment in the industry. Drs. Sanjabi, Khan and Lenyo concluded that claimant had coal workers' pneumoconiosis, a disease caused by the deposition of large amounts of coal dust in the lungs. Dr. Lenyo specifically opined that claimant's lung condition was caused by his employment. Thus, there is sufficient medical evidence to support the commission's decision regarding the causal connection between claimant's employment and his condition of ill-being.

■ Finally, respondent argues that the Commission erred in finding that claimant was permanently and totally disabled. Claimant asserts that the evidence of the extent and nature of his disability is sufficient to support the Commission's finding. Determination of the extent or permanency of a claimant's disability is a question of fact and the Commission's decision will not be set aside unless it is manifestly erroneous. *Esposito v. Industrial Comm'n* (1989), 186 Ill. App. 3d 728, 542 N.E.2d 843.

A person is totally and permanently disabled for the purpose of workers' compensation benefits when he is unable to make some contribution to industry sufficient to justify payment of wages to him. (*A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.) However, a claimant need not be reduced to total physical incapacity or helplessness to be found totally and permanently disabled. (*A.M.T.C. of Illinois, Inc.*, 77 Ill. 2d at 487, 397 N.E.2d at 806.) A person is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. *Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273, 384 N.E.2d 1326.

The record clearly demonstrates claimant is unable to perform the tasks necessary to being gainfully employed. Drs. Khan and Lenyo de-

termined that claimant could not be exposed to coal dust. His age (71 as of the arbitration hearing), his lack of education and training, plus his significant physical limitations are the principal factors that support the Commission's finding that there is no reasonably stable market for his services. Accordingly, the Commission's finding that claimant is totally and permanently disabled is not against the manifest weight of the evidence.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, STOUDER, and H. LEWIS, JJ., concur.