LAUREN BEATTIE, as Widow of Marshall S. Beattie, Deceased, and as Mother and Next Friend of Mark Beattie, Minor Child of Marshall Beattie, Deceased, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Hanley Dawson Cadillac, d/b/a Patrick Volvo, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—94—3832WC

Opinion filed November 17, 1995.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, Peter C. Morse, and Christine L. Olson, of counsel), for appellant.

Michael L. Taden, of Chicago (Marianne Katz, of counsel), for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Lauren Beattie, widow of Marshall Beattie, and as next friend of Mark Beattie (the decedent's minor son), appeals the Industrial Commission's (Commission's) denial of worker's compensation death benefits from her late husband's employer, Hanley Dawson Cadillac, d/b/a Patrick Volvo, Inc. The arbitrator found that Marshall Beattie's death occurred in the course of his employment and awarded benefits. The Commission determined that Beattie's death did not occur in the course of his employment and thus denied benefits. The circuit court confirmed the Commission. The sole issue on appeal is whether the Commission's determination that Beattie's death did not occur in the course of his employment was against the manifest weight of the evidence. We affirm.

Marshall Beattie was the general sales manager at Patrick Volvo. During the week of his death, Patrick was conducting a "midnight madness" sale, meaning the dealership remained open for business until 12 each evening. The decedent arrived home well after midnight on Monday and Tuesday nights the week he died, and then arose early enough to be back in his office for the start of business the next morning. Beattie left for work at 9 a.m. on Wednesday, December 7, 1988. At about 8 p.m., Beattie phoned his wife and told her that he would once again be home late, as he had to meet with Richard Madonia, the dealership's finance manager, who had just informed Beattie of his intention to resign.

That evening Beattie, Madonia and general manager Richard Fisher met at a restaurant called Chianti's. Each of the three men drove his dealership-owned demonstrator car to the restaurant. Fisher bought a round of drinks. Fisher testified before the arbitrator that he was present merely as a moderator of the discussion between Madonia and Beattie. Madonia testified that he was dissatisfied with his compensation and range of responsibilities at Patrick, and Beattie, as his immediate supervisor, was trying to negotiate with him and talk him into staying at the dealership. Each of the men had several drinks. Sometime between 11:30 p.m. and midnight, the three men left Chianti's in their individual cars and drove to Tarragon's, another restaurant. When the three arrived at Tarragon's, Fisher announced that he wouldn't go inside because he was very tired and wanted to go home. Beattie and Madonia went into Tarragon's.

Madonia testified that Beattie had one or two drinks at Chianti's and one or two at Tarragon's. Respondent's counsel attempted to impeach Madonia with his previous statement to police that he did not know how much Beattie had to drink, but Madonia testified that he did not remember making such a statement.

Madonia testified that he and Beattie continued to discuss whether he would stay at Patrick while they were at Tarragon's. Madonia said his decision to stay at least until the next year's compensation levels were announced was finalized at Tarragon's. Fisher was asked whether he thought the question of Madonia's resignation was resolved by the time the trio left Chianti's. He answered:

> "Not necessarily. These things are never—You know, if I were to sit here and tell you the book was closed, then I would be lying. If I were to sit here and tell you that it was my impression that he would probably be staying with the right policies and procedures, then yes."

Madonia testified that he last saw Beattie at approximately 1 a.m. He said Beattie seemed able to stand without wobbling and to walk in a normal manner and that he could converse professionally. Madonia did not see Beattie leave, but believed he left around 1 a.m. or shortly thereafter.

Beattie drove his demo car onto I-90 (Northwest Tollway/Kennedy Expressway) headed in the direction of his home on Chicago's north side. At about 1:35 a.m. on Thursday, December 8, 1988, Beattie's car rear-ended a semi-truck. Beattie died at the scene. The coroner's report found that Beattie's blood-alcohol level was .197% and that his death resulted from multiple injuries suffered in the collision.

Before the arbitrator, Patrick introduced a report from Dr. DelBoccio stating his expert opinion that the level of alcohol in Beattie's blood would have caused at least a moderate degree of deterioration in judgment, decreased muscular coordination, slowed reaction time to stimuli and some degree of visual impairment. He also opined that Beattie would have had to ingest approximately 10 mixed drinks or 10 bottles of beer to reach such a blood-alcohol concentration. The petitioner did not present any rebuttal to the expert's report.

The arbitrator found Madonia's testimony that he and Beattie continued to discuss business while at Tarragon's to be credible, and found that Beattie was within the scope of his employment at Tarragon's and he left there to drive home in transportation provided by his employer. Therefore, the arbitrator ruled, he was acting within the scope of his employment at the instant of his death. The arbitrator awarded the petitioner $566.97 per week until the limit of $250,000 or 20 years was reached.

The Commission reversed. It found that Madonia's testimony that he and Beattie continued to discuss business at Tarragon's was not credible and that other circumstances, such as the fact that Beattie left Tarragon's without telling Madonia that he was going,

indicated that the 1- to 1¹/₂-hour stay at Tarragon's was purely social, and thus Beattie was not acting in the course of his employment. The Commission also found that Beattie's blood-alcohol level was such that he would have been unable to perform his job function, which in this case was driving the dealership-owned car. In its finding, the Commission relied on Fisher's testimony that he did not know for sure that Beattie and Madonia continued to discuss business at Tarragon's, because he wasn't present, and that he believed that Madonia would ultimately remain in the dealership's employment by the time the three men left Chianti's.

The circuit court confirmed the Commission. The court found that the Commission's reliance on Fisher's testimony and rejection of Madonia's was not against the manifest weight of the evidence. It further found that the time spent at Tarragon's was purely social, and therefore Beattie was not acting in the course of his employment at the time of his death. The court also relied on Beattie's blood-alcohol level in finding that the Commission reasonably inferred that Beattie was too intoxicated to drive legally.

■ We first note that the determination of whether an injury arose out of and in the course of a claimant's employment is a question of fact for the Commission and its resolution will not be disturbed unless it is against the manifest weight of the evidence. (*Hansel & Gretel Day Care v. Industrial Comm'n* (1991), 215 Ill. App. 3d 284, 293.) "In the course of" employment refers to the time, place and circumstances under which the accident occurred, while "arise out of" employment means there is a causal connection between the accidental injury and some risk incidental to or connected with the activity an employee must perform to fulfill his duties. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 57-58.) The claimant has the burden of proving all elements of the claim, including the existence of a causal relationship between the employment and the injury. (See *Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 548.) The determination of causation is a question of fact to be resolved by the Commission. (*Illinois Mutual Insurance Co. v. Industrial Comm'n* (1990), 201 Ill. App. 3d 1018, 1038.) In resolving questions of fact, it is the province of the Commission to assess the credibility of witnesses, resolve conflicts in the evidence, assign the weight to be accorded the evidence and draw reasonable inferences from the evidence. *Kirkwood v. Industrial Comm'n* (1981), 84 Ill. 2d 14, 20.

We further note that the Commission's decision is against the manifest weight of the evidence only where an opposite conclusion is clearly evident. (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill.

App. 3d 288, 291.) The test is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination. *Boatman v. Industrial Comm'n* (1993), 256 Ill. App. 3d 1070, 1071.

The claimant's sole contention on appeal is that the Commission's denial of benefits was against the manifest weight of the evidence because Beattie was driving a company-owned vehicle home from a business-related function at the time of his death. This argument is twofold: (1) that the gathering at Tarragon's was for business rather than social purposes, and (2) that Beattie was not so intoxicated that he was unable to perform the functions of his employment.

■ It should be noted that the employer does not appear to contest the claimant's assertion that notwithstanding the general rule that travel to and from employment is not compensable, this case falls within the exception that where an employer provides transportation for the employer's own benefit, such travel may be considered to be within the scope of employment. (See *Stevenson Olds Sales & Service v. Industrial Comm'n* (1986), 140 Ill. App. 3d 703, 705.) Beattie was driving a dealership-owned demonstrator car, the written agreement for which provided that use of the car was for the employer's advertisement purposes. Consequently, our focus is whether the Commission erred when it found that Beattie left the scope of his employment when he stopped at Tarragon's and remained there for 1 to $1^{1}/2$ hours (*i.e.*, whether his purpose there was purely social). Similarly, if there was any business purpose to the Tarragon's excursion, we must then determine whether the Commission erred when it found that Beattie was too intoxicated to perform his job function (driving the demo car) when he left Tarragon's and was thus acting outside the course of his employment when he began to drive home. See *County of Cook v. Industrial Comm'n* (1988), 177 Ill. App. 3d 264.

■ We will first address the Commission's finding that the excursion to Tarragon's was purely social in nature. In so finding, the Commission disregarded Madonia's testimony that he and Beattie continued to discuss his employment at Patrick after their arrival at Tarragon's. The Commission instead focused on Fisher's admission that he believed at the time he parted company from the others that Madonia would ultimately decide to remain in Patrick's employ, and that Madonia testified that he did not see Beattie leave Tarragon's, meaning apparently that Beattie and Madonia did not leave at the same time, nor did they wish each other good night immediately prior to Beattie's leaving. Taken together, the Commission deter-

mined that these factors reasonably led to the conclusion that Madonia and Beattie went to Tarragon's on a social excursion, and that for all intents and purposes, their business discussions were concluded by the time they left Chianti's.

As we noted above, the determination of the credibility of witnesses and the weight to be accorded the evidence is the province of the Commission. Our function is solely to determine whether enough factual evidence exists in the record to support the Commission's decision. We find that, taken together, the circumstances of this case support the Commission's conclusion that the side trip to Tarragon's was purely social in nature, and thus Beattie was not acting in the course of his employment during the 1 to $1^1/_2$ hours he spent there. The Commission's determination on this point was therefore not against the manifest weight of the evidence.

Turning to the question of Beattie's intoxication, we find that the cases cited by the claimant are inapposite. In the one case cited by the claimant where the decedent was in fact found to be acting in the course of his employment when he drove off of a road while intoxicated, the decedent had just left a business meeting and was headed for his motel. The court there found that the nature of the decedent's job was such that the employer could reasonably foresee that he would drink alcohol at the meeting he had just attended and that he would drive "home" afterward. (See *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544.) The instant case is distinguishable, because the employer could not be expected to foresee that the decedent would become so intoxicated at a social function he attended on the way home that he would be rendered legally incapable of driving. We also note that the decedent in *District 141* was away on a business trip when he died and arguably, therefore, was driving on the roadway where he died solely because he was on a business trip. The instant decedent, however, was merely driving home from a social function he undertook *after* work with someone who happened to be a co-worker. We do not conclude that because Beattie was travelling in transportation provided by his employer that *any* conduct in which he engaged on his way home must necessarily be found to be within the course of his employment.

In all of the other cases cited by the claimant, the courts found that whether a claimant was legally intoxicated is irrelevant to the question of whether or not he is too intoxicated to perform his job function. (See *County of Cook,* 177 Ill. App. 3d 274; *Panagos v. Industrial Comm'n* (1988), 171 Ill. App. 3d 12; *Freeman United Coal Mining Co. v. Industrial Comm'n* (1987), 160 Ill. App. 3d 524.)

However, in none of those cases was the claimant's job function to drive a vehicle on a public roadway. In such a case, the fact that the claimant was acting illegally may become a factor in the determination. While not dispositive alone, this situation does then raise the question of the reasonable foreseeability of such behavior. In *Panagos,* the court found that because the employee became intoxicated while at work and with the full knowledge of her employer, her subsequent car accident was foreseeable by the employer. *(Panagos,* 171 Ill. App. 3d at 15-16.) In the instant case, no evidence was presented tending to show that the employer could reasonably foresee that the employee would drive its vehicle while intoxicated after leaving a purely social function.

The claimant appears to argue that the "job function" that we must consider is not driving the car, but rather conversing and negotiating orally. The claimant notes that Madonia testified that the decedent did not appear to be intoxicated and that he could walk and talk normally when he was last seen at Tarragon's at about 1 a.m. This argument suggests that we should find the decedent to have been within the scope of his employment at the time of his death merely because he was travelling home in transportation provided by his employer for the employer's benefit. However, we cannot find that the instant situation is the same as if the decedent were a passenger in employer-provided transportation, as was the case in *County of Cook.* Where the decedent was himself driving the vehicle, we must take into account the legal intoxication standard, which is itself based on a medical standard correlating blood-alcohol levels with a normal human being's ability to perform the necessary cognitive and motor tasks required to drive.

Similarly, our supreme court in *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, found that voluntary intoxication that is the sole cause of the injury provides the employer with a defense to a worker's compensation claim. Citing analysis proffered by Professor Larson, the court said:

> "[I]t would seem that an employer raising the defense of intoxication could prevail on either of two separate grounds. First, an employee, though in the course of his employment, will be denied recovery if his intoxication is the cause of the injury—that is, if the injury arose out of the intoxication rather than out of the employment. Second, excessive intoxication may constitute a departure from the course of employment, and an employee who is injured in that condition does not sustain an injury in the course of his employment. Under the latter rationale, intoxication of a sufficient degree is viewed as an abandonment of employment, or

a departure from employment. See 1A A. Larson, The Law of Workman's Compensation § 34.21, at 6—83 through 6—84 & n.16.1 (1985)." *Paganelis,* 132 Ill. 2d at 481.

Our supreme court has recently reiterated this position in *Parro v. Industrial Comm'n,* wherein the court again found that intoxication that is the sole cause of a claimant's injury constitutes a defense to a worker's compensation claim. *Parro v. Industrial Comm'n* (1995), 167 Ill. 2d 385, 393.

This analysis returns us then to the foreseeability issue, which was the basis for the award both in *District 141* and in *Panogos.* In both of those cases, the claimant's (or decedent's) intoxication was found to be foreseeable by the employer because it occurred *during* the performance of his or her job functions. As noted, the instant case is distinguishable because, although Beattie drank alcohol during the Chianti's meeting, he subsequently consumed more alcohol at Tarragon's during his social outing. Further, the Commission was reasonable to conclude that Beattie's intoxication level was high enough to have been the sole cause of his injury. Consequently, we find that the Commission's determination that the decedent was acting outside the course of his employment at the time of his death was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE, and RARICK, JJ., concur.