FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Louis Selmo, Appellee).

Fifth District (Industrial Commission Division)   No. 5—95—0392WC

Opinion filed August 15, 1996.—Rehearing denied October 1, 1996.

RARICK, J., dissenting.

Kenneth F. Werts, of Craig & Craig, of Mt. Vernon, for appellant.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

On July 22, 1986, claimant, Louis Selmo, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (the Diseases Act) (820 ILCS 310/1 *et seq.* (West 1994)) for injuries he sustained during his employment with Freeman United Coal Mining Company (employer). The arbitrator awarded claimant 15% permanent partial disability to the person as a whole as a result of coal workers' pneumoconiosis (CWP). The Industrial Commission (the Commission) affirmed. On administrative review, the circuit court of Williamson County (Judge Murphy) remanded the case back to the Commission for reconsideration. On remand, the Commission increased the award to 20% of the person as a whole. The circuit court of Franklin County (Judge Jordan) confirmed this increase.

Employer now appeals. For the following reasons, we reverse the decision of the circuit court of Williamson County.

## I. FACTS

Claimant last worked for employer on March 29, 1988, at which time he retired from 34 years of coal mining employment. He was exposed to coal dust on a daily basis throughout these 34 years.

Claimant testified he was 61 years old when he retired and he retired only because of breathing and health problems from the coal dust. He would have continued to work had it not been for his breathing condition, which caused him difficulties while walking his examiner route. He first began experiencing breathing problems in 1974, and they worsened over time. Since his retirement, his problems have remained the same and limit his activities. He can walk one block or climb one flight of stairs before experiencing shortness of breath. The problems interfere with his bird hunting and limit his ability to work in his garden and around his home. After he retired, claimant held an elected position as a public health and safety commissioner in Zeigler for which he received $50 per month.

Dr. Saeed Khan examined claimant on November 4, 1988, at the request of claimant's counsel. Based upon his examination and testing, Dr. Khan diagnosed claimant as suffering from CWP and pulmonary emphysema. He concluded that claimant suffered from a significant pulmonary impairment caused by CWP and pulmonary emphysema. According to Dr. Khan, "due to his abnormal chest X[ ] ray, abnormal pulmonary function test, and markedly abnormal arterial blood gases, he is not suitable to perform his coal miner[']s job underground due to further deterioration of his breathing problems" and "further exposure to coal dust will be injurious to his health."

Dr. Jeffrey Selby examined claimant on June 2, 1989, at the request of employer. Dr. Selby concluded that claimant had X-ray evidence of simple CWP but that he suffered from no impairment due to CWP. Claimant did have significant impairment from marked morbid obesity and some degree of asthma. Dr. Selby found no causation between claimant's complaints and his employment.

Dr. Darryl Sugar examined claimant on December 19, 1984, at the request of employer. Dr. Sugar concluded that claimant did not suffer from CWP or any pulmonary function disability causally related to exposure to coal dust. Any symptoms claimant experienced were due to his obesity. Dr. Sugar stated that claimant could continue his employment as a coal miner without risk to his pulmonary condition. Dr. Sugar admitted that his opinion was only correct as of the date of his examination, which was four years prior to claimant's retirement.

## II. ANALYSIS

At the outset, we note that the trial court's remand order does not specify that the Commission's 15% award is against the manifest weight of the evidence. The order simply states:

"The Court *** finds that the Industrial Commission should reconsider this cause in light of *Zeigler Coal Co. v. Industrial Comm'n*, 237 Ill. App. 3d 213 (5th Dist. 1992) and *Monterey Coal Co. v. Industrial Comm'n*, 241 Ill. App. 3d 386 (4th Dist. 1992), and

IT IS, THEREFORE, ORDERED, that the Decision of the Industrial Commission is remanded to the Industrial Commission for reconsideration consistent with my Letter Opinion of September 8, 1993, attached hereto."

The judge's September 8, 1993, letter states:

"I am persuaded by the briefs in each of the above cases that each should be remanded to the [C]ommission and that the [C]ommission should reconsider each case in light of the *Zeigler* and *Monterey* Cases. If the arbitrator has found and the Commission concurred that disability is caused in part by coal miners['] pneumoconiosis and if there is medical evidence of record to justify not returning to work, then the amount that earning capacity has been reduced needs to be reviewed in light of the cases cited."

### A. PROPRIETY OF REMAND

According to claimant:

"[The Diseases Act] defines disablement alternatively as either **'an impairment or partial impairment, temporary or permanent in the function of the body or any of the members of the body, *or the event of becoming disabled from earning full wages at the work in which the employee was [last] engaged* .....'** [Citation.] The case law interpreting the Act also holds that an employee is disabled if his continued work would harm his health. [Citations.] These cases reflect the fact that '... the award of compensation is not for the disability as such, but for the impaired earning capacity which results from th[e] disability.' *E.R. Moore Co. v. Industrial Comm['n]*, [71 Ill. 2d 353, 376,] 376 N.E.2d [206,] 210 [(1978)]." (Emphasis in original.)

Claimant states that because the Commission ignored one element of damages—loss of earning capacity—the circuit court had authority to remand.

Although we agree with claimant's statement that the Diseases Act defines disablement alternatively, as either a functional disability or as a loss of earning capacity (820 ILCS 310/1(e) (West 1994)), we do not agree that this provision defines or provides for compensation.

■ Two distinct analyses, relevant here, are involved when an

employee seeks compensation under the Diseases Act. First, is he or she disabled? Second, how is he or she compensated once disability is proven? As to the first inquiry, section 1(e) of the Diseases Act defines two ways in which an employee may become disabled. He or she may suffer a purely functional disability or suffer an impairment which results in a loss of earning capacity. 820 ILCS 310/1(e) (West 1994). Under this definition, an employee may incur a job-related functional disability yet still perform his or her usual job. Although there is no loss of earning capacity, the employee is disabled pursuant to section 1(e). On the other hand, when an employee suffers a loss of earning capacity, he necessarily suffers from some impairment because he is precluded from performing his job functions. In either event, section 1(e) only deals with how or why an employee is disabled; it does not address compensation.

Once an employee proves he or she has a disability (of either kind), he or she is compensated as provided in the Diseases Act. The Diseases Act incorporates the recovery provisions of the Workers' Compensation Act (the Compensation Act), with limitations not relevant here. 820 ILCS 310/7 (West 1994). The Compensation Act provides for various types of compensation, only one of which is relevant here: paragraph (d) of section 8, permanent partial disability. 820 ILCS 310/8(d) (West 1994). Section 8(d) specifies two distinct types of compensation: a wage-differential award (paragraph 1) *or* a percentage-of-the-person-as-a-whole award (paragraph 2).

Under paragraph 1, the wage-differential award provision, an employee who is incapacitated from performing his or her customary job and pursues another type of employment, or is able to prove an amount he or she is able to earn from some other type of employment, may receive an award based on the difference between his customary employment earnings and the new earnings.

Under paragraph 2, the percentage-of-the-person-as-a-whole provision, the employee receives an award based on the percentage of his partial disability to the person as a whole. Several scenarios for recovery are defined therein.

Under the plain language of section 8(d), loss of earning capacity is addressed in both paragraphs 1 and 2. However, loss of earning capacity comes into play in paragraph 2 only when an employee has an impairment of earning capacity and elects to be compensated under paragraph 2, *e.g.*, chooses a percentage-of-the-person-as-a-whole award. The language is clear: "or having resulted in an impairment of earning capacity, the employee *elects to waive his right to recover under* *** subparagraph 1." (Emphasis added.) 820 ILCS 305/8(d)(2) (West 1994). This election demonstrates that an employee cannot re-

cover both a wage-differential and percentage-of-the-person-as-a-whole award but must choose between the two. There is no language in the statute that allows doubling or dual compensation under both provisions.

■ In the case before us, claimant argues he is functionally incapacitated and this incapacitation resulted in a loss of earnings. Thus, claimant could fit under either paragraph 1 or 2. Paragraph 2 specifically provides that if this situation arises, the employee receives an award under paragraph 1 unless he or she elects to waive the right to recover a wage-differential award and instead chooses to receive a percentage-of-the-person-as-a-whole award. Although claimant had the opportunity to seek and prove a wage-differential award, he did not present any evidence to that effect. Thus, he chose not to prove up a wage-differential award, thereby electing to waive such award and proceed under the provision authorizing a percentage-of-the-person-as-a-whole award. Because claimant chose to proceed under paragraph 2, he is entitled to what that section provides—nothing more, nothing less.

The plain language of the statute answers claimant's contention: he is entitled to an award for his disability based on either wage differential *or* percentage of the person as a whole; claimant is not entitled to an award for both, whether or not he suffers from both a functional disability and a loss of earning capacity.

■ Claimant's position that the arbitrator failed to consider loss of earning capacity is without merit. While it is true the arbitrator awarded claimant compensation for functional disability, he did not state he had not considered loss of earning capacity. Nor is there any evidence that the arbitrator did not consider loss of earning capacity. It is just as likely that he considered it and rejected it, finding that claimant had failed to prove any loss of earning capacity due to CWP. We will not speculate on what the arbitrator considered in rendering his opinion; "[o]ur function is solely to determine whether enough factual evidence exists in the record to support the Commission's decision." *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 451 (1995). It is clear that the arbitrator credited some of claimant's testimony because he found an impairment despite testimony to the contrary and awarded claimant compensation for that impairment. However, there was also evidence that any impairment was mild and claimant was able to work. Further, there was evidence that the impairment was not due to CWP but rather some other condition, such as his obesity, asthma, and deconditioning. As a result, it was not error for the arbitrator to conclude that claimant did not incur a loss of earning capacity.

■ Further, we find no support in *Monterey Coal Co. v. Industrial Comm'n*, 241 Ill. App. 3d 386 (1992), or *Zeigler Coal Co. v. Industrial Comm'n*, 237 Ill. App. 3d 213 (1992), to warrant the circuit court's remand or to support claimant's contention that loss of earnings must be compensated separately. Claimant relies on the following language from *Monterey*:

> "The record clearly demonstrates claimant is unable to perform the tasks necessary to being gainfully employed. Drs. Khan and Lenyo determined that claimant could not be exposed to coal dust. His age (71 as of the arbitration hearing), his lack of education and training, plus his significant physical limitations are the principal factors that support the Commission's finding that there is no reasonably stable market for his services." *Monterey Coal Co.*, 241 Ill. App. 3d at 393-94.

Claimant further relies on *Zeigler*:

> "As to whether claimant proved his total and permanent disability, claimant testified that he was 66 years old and had worked all of his adult life in coal mines. He stated that he was unable to perform any type of work. Drs. Khan and Houser opined that claimant should not be exposed further to coal and rock dust. This prohibition coupled with claimant's age, lack of training in any other job and his physical limitations supports the Commission's determination that there is no reasonably stable market for his services." *Zeigler Coal Co.*, 237 Ill. App. 3d at 219-20.

In both *Monterey* and *Zeigler*, the Commission found there was no reasonably stable market for claimants' services based on the fact they could not return to coal mining, could not perform any employment, and suffered from severe physical limitations. The claimants were elderly and lacked education and training to perform any type of employment other than coal mining. Thus, the Commission found that they were entitled to permanent total disability awards.

The only proposition *Monterey* and *Zeigler* stand for is that, based on the records in those cases and those facts that the Commission chose to believe, awards for total permanent disability were not against the manifest weight of the evidence. They do not stand for the proposition that anything less than total permanent disability in a CWP case where claimant is unable to return to coal mining would be against the manifest weight of the evidence. Based on the above, we find that the circuit court of Williamson County (Judge Murphy) erred in remanding claimant's case for reconsideration. We now consider whether the original decision of the Commission is against the manifest weight of the evidence.

### B. MANIFEST WEIGHT OF THE EVIDENCE

■ "Because of the Industrial Commission's expertise in the area

of workers' compensation, its finding on the question of the nature and extent of permanent disability should be given substantial deference. [Citation.] It is not the province of a court to substitute its judgment for that of the Industrial Commission merely because it might have made a different finding. [Citation.] The Commission is the judge of the credibility of the witnesses and the weight to be given their testimony. [Citation.] It is for the Commission to resolve disputes in the evidence and draw reasonable inferences and conclusions from that evidence, and the Commission's decision will not be set aside on review unless it is contrary to the manifest weight of the evidence. [Citation.]" *Grischow v. Industrial Comm'n*, 228 Ill. App. 3d 551, 559 (1992). "[W]e will affirm the Industrial Commission's decision if there is any legal basis in the record which would sustain that decision, regardless of whether the particular reasons or findings contained in the decision are correct or sound." *Butler Manufacturing Co. v. Industrial Comm'n*, 140 Ill. App. 3d 729, 734 (1986). "The test of whether the Commission's decision was supported by the manifest weight of the evidence is not whether the reviewing court or any other tribunal might reach the opposite conclusion on the same evidence, but whether there was sufficient factual evidence in the record to support the Commission's decision." *Lenhardt Tool & Die Co. v. Industrial Comm'n*, 232 Ill. App. 3d 693, 696 (1992).

■ Although there was testimony that claimant could not go back to coal mining, there was also testimony that claimant's disability was mild and that he could resume coal mining. In addition, there was no evidence presented that he could not perform some other employment. On those facts, the Commission found he did not fall into the odd-lot category. The Commission, in *Monterey* and *Zeigler*, believed the testimony of the claimants and their physicians as to the extreme extent of their disabilities and gave weight to that evidence. On the other hand, in the instant case, the arbitrator believed some of numerous witnesses' testimony and disbelieved other portions of their testimony. The arbitrator gave credence to the testimony of claimant, Dr. Khan, and Dr. Selby that claimant suffered from CWP because he found claimant functionally disabled. However, there was also testimony that the CWP was mild. Likewise, there was evidence that any impairment affecting claimant was due to conditions other than CWP. Dr. Selby opined that claimant was disabled due to his obesity (6 feet, 321 pounds), asthma, and deconditioning. Thus, there is ample evidence from which the arbitrator could reasonably infer that the claimant suffered only a 15% impairment. He also may have inferred a greater impairment but that any

impairment over 15% was due to factors other than CWP. Claimant's physician did not opine that claimant was totally disabled or unable to work outside the mining industry. Moreover, claimant's testimony demonstrated that he was able to do some sort of work. He held an elected position, and although it did not require extensive work or exertion, it did require him to visit various police and fire departments and to correct problems. It was the Commission's duty to weigh the evidence, and based on the record, we cannot say that its decision of November 19, 1992, was against the manifest weight of the evidence.

## III. CONCLUSION

Based on the foregoing, we find the circuit court of Williamson County (Judge Murphy) erred in remanding the case to the Commission for reconsideration. We further find the Commission's decision of November 19, 1992, was not against the manifest weight of the evidence.

Franklin County No. 94—MR—35—Vacated.
Williamson County No. 92—MR—98—Reversed.
Industrial Commission decision of November 19, 1992, confirmed.

McCULLOUGH, P.J., and COLWELL and HOLDRIDGE, JJ., concur.

RARICK, J., dissenting:

I agree with the majority that claimant is entitled to only one form of compensation, that is, either a wage-differential award or a percentage-of-the-person-as-a-whole award. However, claimant does not contend that he is entitled to both types of award. Instead, claimant contends that compensation for loss of earning capacity must be included in the percentage award, and a plain reading of the statute supports this position. I would affirm the Commission's corrected decision.

Section 8(d)(2) provides that if claimant's disease partially incapacitates him from pursuing the duties of his employment *and* such disease results in the impairment of earning capacity, and if claimant "elects" to waive his right to recover under the wage differential provision, he is entitled to receive a percentage award. 820 ILCS 305/8(d)(2) (West 1994). As the majority notes, section 8(d)(2) provides for a person-as-a-whole award under several different scenarios, including where claimant suffers injuries which partially incapacitate him from his or her normal job function *and* result in

an impairment of earnings and he or she elects to receive an award under paragraph 2 rather than paragraph 1. 820 ILCS 305/8(d)(2) (West 1994). The language of the statute clearly and unequivocally contemplates a claimant receiving a person-as-a-whole award which compensates him for both functional incapacity *and* impairment of earnings if both elements are present. Accordingly, if claimant proves both functional impairment and loss of earning capacity, he is entitled to compensation for such loss in a single percentage award.

The statute clearly defines disability as either a functional impairment "or the event of becoming disabled from earning full wages at the work in which the employee was [last] engaged." 820 ILCS 310/1(e) (West 1994). An award of compensation is not for the disability as such, but for the impaired earning capacity which results from that disability. *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 360, 376 N.E.2d 206, 209 (1978). Claimant must prove the nature and extent of his disablement, including the loss of earning capacity. In assessing the extent of disablement, the Commission must consider claimant's age, experience, training, and capabilities. See *E.R. Moore*, 71 Ill. 2d at 362, 376 N.E.2d at 210.

Here, claimant presented medical evidence that he could not return to coal mining because it would only exacerbate his pneumoconiosis. Claimant had spent 27 years in mining, had an eleventh-grade education, and was 61 years old at the time of arbitration. Although claimant had spent 17 years as a laborer, that employment ended 20 years ago when claimant began working for respondent. The medical evidence, plus claimant's advanced age, limited education, and lack of experience outside the mining industry, indicates not only a loss of earning capacity as a coal miner but also an inability to perform services except those for which only a limited job market exists. Accordingly, claimant presented a case for both functional impairment and loss of earning capacity. Although the majority contends that there is nothing in the record indicating that the arbitrator did not consider claimant's loss of earning capacity, I believe that the language employed by the arbitrator unequivocally demonstrates that he did not:

> "It is the finding of the Arbitrator that *on the basis of his functional impairment* as measured by the testimony of Petitioner and the testing of record, that [*sic*] Petitioner is permanently partially disabled to the man-as-a-whole to the extent of 15%." (Emphasis added.)

The Commission affirmed and adopted the arbitrator's decision. The circuit court properly remanded the cause based on the Commission's failure to consider claimant's loss of earning capacity when determin-

ing the percentage of the person-as-a-whole award. 820 ILCS 310/19(f)(2) (West 1994). On remand, the Commission increased the award to 20% of the person as a whole, and that increase was based upon medical evidence that plaintiff could no longer work in the mining industry although other gainful employment was not precluded. The Commission properly followed the dictates of the remand order and entered an increased award which is not against the manifest weight of the evidence. I would affirm the Commission's corrected decision and opinion.